# Acree *et al. v.* Dabney.

## *Statutory Action of Ejectment.*

1. *Estates; when vested remainder created by will.*—Where a testator under his will devises land to his wife for life, which is "after her death to be equally divided between my [his] children which may then be surviving;" the wife takes a life estate in the land and each of the children of the testator takes a vested remainder subject to be divested only by the survivorship of one or more of such children after the falling in of the life estate.

2. *Same; same; when purchaser from remainderman acquires title; ejectment.*—Where a testator devises his land to his wife for life which is, "after her death to be equally divided between my [his] children which may then be surviving," and the life tenant and each of the children of the testator executes a warranty deed to such land, the grantee in such deed acquires a fee simple title to said land; and the death of each of the children of the testator before the death of the life tenant does not give the heirs of the remaindermen the right to maintain an action of ejectment against the grantee in said deed.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This was a statutory action of ejectment brought by the appellants as children of James and Samuel Oliver, against the defendant, Jesse Dabney, to recover certain lands specifically described in the complaint. The cause was tried by the court without the intervention of a jury upon an agreed statement of facts, and the claim of the plaintiff and the defendant, respectively, are shown in the opinion. Upon such facts the court rendered judgment in favor of the defendant, to the rendition of which judgment the plaintiff duly excepted. The

[Acree *et al.* v. Dabney.]

plaintiff appeals, and assigns as error the rendition of judgment for the defendant.

P. C. MASSIE, JENNINGS J. PIERCE and R. T. GOODWIN, for appellant.—The interest acquired by the children of Oliver under which will was divested by their death before the falling in of the precedent estate. Therefore, the deed of Oliver's children conveyed nothing, nor does it estop the heirs of Oliver, the plaintiffs in the present suit, from maintaining this action.—*Smaw v. Young,* 109 Ala. 528; *Upington v. Carrigan,* 37 L. R. A. 795; *Moore v. Little,* 41 N. Y. 66.

JOSEPH CALLOWAY and HILL & HILL, *contra.*

TYSON, J.—This is an action of ejectment brought by the children of James and Samuel Oliver to recover the tract of land described in the complaint. The father of James and Samuel, being the owner of this land, made a will in which he devised it to his wife for life and "after her death to be equally divided between my [his] children which may then be surviving." The testator left surviving him, in addition to James and Samuel, another son, John, and his wife, the life tenant, Susan. Each of the sons and the life tenant executed warranty deeds of bargain and sale to the land to one Dillard, who went into possession and afterwards sold it to the defendant. After the execution of these deeds, the sons died, leaving surviving them the life tenant, who also died a short time before the institution of this suit.

Before entering upon a discussion of the nature or character of the remainder to the children, it may be well to dispel any doubt that may exist as to the intention of the testator to expressly devise to his three sons *eo nomine* the fee in the land sued for. To do this, it is only necessary to call attention to the second item of the will, which reads as follows: "The other three-fourths of my negroes, I do hereby devise and bequeath unto my three children to-wit: Samuel C. Oliver, James McCarter Oliver and Knox Ponder [John R.] Oliver,

to be equally divided between them, share and share alike to them and their heirs forever, *together with the foregoing bequest to their mother after her death.*"

Under the principles declared in *Thorington v. Hall* (111 Ala. 323), *Smaw v. Young* (109 Ala. 528) and *Kumpe v. Coons* (63 Ala. 448), the wife took a life estate in the land and each of the children of the testator, the three sons, took a vested remainder subject to be divested. In the cases of *Thorington v. Hall* and *Smaw v. Young*, there was a divestiture of the share or shares of those remaindermen who died before the life tenant since there was a surviving remainderman or men to take. In the case in hand, there is no surviving child or remainderman to take upon the termination of the life estate since all of them died before the life tenant. The event or contingency upon which the estate already vested, was to be divested, did not happen. Where this is the case, the rule is, that "an estate once vested will not be divested, unless all the events which are to precede the vesting of a substituted devise happen." Applying this rule of construction, "in *Harrison v. Forman*, where a fund was bequeathed to A. for life, and after her decease to P. and S. in equal moities; and in case of the death of either of them in the lifetime of A., then the whole to the survivor *living at her decease.* Both died in her lifetime; and Sir R. P. ARDEN, M. R., held that the original gift was not defeated. So, in *Sturgess v. Pearson*, it was held, that a gift to a person for life, and after his death to his three children, *or such of them as should be living at the time of his death,* conferred a vested interest on the children, subject to be divested only in favor of those who should be living at the prescribed period; so that if all the children died in the lifetime of the tenant for life, the shares of the whole devolved to their respective representatives.  *  *  *  So in *Belk v. Slack*, where a testator gave the residue of his real and personal estate to trustees, upon trust for A. for life, and after the decease of A. and B. he gave the same to C. and D. to be equally divided between them, share and share alike, or to the survivor or survivors of them. C. and D. both died in the lifetime of A. and B.; and it

was held that their respective representatives were entitled to the several moities of the residue."—1 Jarman on Wills, *pp. 785, 786, top pp. 799, 800. See report of these cases in 5 Ves. 207; 4 Mad. 441, 1 Keene, 238.

In *Page v. May* (24 Beavan's Rep. 323), the testator bequeathed his reversionary interest in the 1000£ consols to his mother for her life and at her decease he gave and bequeathed them to his servant, Sarah Triggs, for life, "and after her decease he gave the said 1000£ to John, Edward and Samuel Page *to be equally divided share and share alike or in case of the demise of each or either of them,* to be divided between the survivors or survivor, or their representatives." The three legatees, John, Edward and Samuel, died in the lifetime of Sarah who survived the first life tenant, the mother. The court said: "The three legatees having died in the life of the tenant for life, the question is, whether this legacy took effect or went over. I am of opinion that it falls within the case of *Harrison v. Forman* [*supra*], and that class of cases. It is, in effect, an alternative bequest to them, and if one or two of them happened to die, and two or one of them survived the tenant for life, then the whole would go to the survivors or survivor, as the case might be. But the first bequest to the three was a vested gift, liable to be divested on the happening of a particular event, which did not occur, namely, of there being survivors or a survivor at the death of the tenant for life."

In *Littlejohn v. Household* (21 Beav. 29), the testator by his will devised a house to his three daughters, Catherine, Ann and Elizabeth, for life, and after their decease to his three grandchildren, Catherine, Christiana and William, their heirs and assigns, share and share alike; and he authorized his trustee to convey the house to his said grandchildren, their heirs and assigns, in such shares as aforesaid. And in the event of the death of either of his said grandchildren in the lifetime of his said daughters, then the testator desired that the share of them so dying should be *transferred* to the survivors, and if only one should be living, then to him or her so surviving. The court said: "I think

[Acree *et al.* v. Dabney.]

there is not much difficulty on the face of the will.　There is a plain gift for life in the first instance to the testator's daughters, and there is a clear vested remainder to the three grandchildren as tenants in common in fee, which cannot be taken away or divested except by express words.　The words are [His Honor read the divesting clause.]　Those being the words, the question is, in the first place, when is the transfer of the estate to take place?　It can only take place after the death of the surviving tenant for life, that is, after the death of the surviving daughter of the testator.　The same period must be the time for divesting the estate, in case it was divested.　'Surviving,' therefore, at the end of the clause, means surviving the last tenant for life.　The case of *Cripps v. Wolcott,* therefore, clearly applies to this case, and this is made clear by the word 'transferred,' because there could be no transfer till after the death of the last tenant for life; and *Sturgiss v. Pearson* [*supra*] also applies, for in that case the gift was a vested interest subject to be divested in favour of survivors, but none survived, and, therefore, there was no divesting."　See also 29 Am. & Eng. Ency. Law (1st ed), 467 and note 2.

This rule of construction has been fully recognized and enforced by this court in *Sherrod v. Sherrod,* 38 Ala. 537, *Drew v. Drew,* 66 Ala. 455, and *Grimball v. Patton,* 70 Ala. 626. The plaintiffs' father having a vested estate, which was never divested by the happening of the contingency of survivorship of one or more of them of the life tenant, their deeds operated to pass the fee to the defendant's grantor and, therefore, to preclude their recovery.

Affirmed.